Lenard SHUMWAY and Edith Shumway,
Appellants (Plaintiffs),

v.

TOM SANFORD, INC., a Wyoming
Corporation, Appellee (Defendant).

No. 5493.

Supreme Court of Wyoming.

Dec. 14, 1981.

Michael S. Messenger, Thermopolis, for appellants.

Ruth Clare Yonkee, Thermopolis, and Elmer J. Scott, Worland, for appellee.

· Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

THOMAS, Justice.

This case arises out of a claim of an easement to travel over the lands of another asserted to have been acquired by prescription. The district court found that no prescriptive easement had been acquired because the appellants Shumway had not established that their use was adverse or hostile. In so finding the district court rejected the appellants' argument that a presumption of adverse and hostile use arises out of the establishment of the other elements which are required to establish an easement by prescription. The district court held instead that there were present facts from which arose a presumption that appellants' use was permissive, and that the appellants had not rebutted that presumption. We shall affirm the district court.

The appellants and the appellee, Tom Sanford, Inc., are owners of adjacent lands in Hot Springs County, Wyoming. Appellants describe the lands that they own as the NW ¼, and all of those parts of the NW ¼ NE ¼, the SW ¼ NE ¼, and the SE ¼ NE ¼, which lie west of the Thermopolis-Meeteetse State Highway 120, all being in Section 10, Township 43 North, Range 96 West of the 6th P.M. The lands of the appellee over which the prescriptive easement was sought are the SW ¼ SW ¼ of Section 10, Township 43 North, Range 96 West of the 6th P.M.

As one travels northwesterly from Thermopolis, Wyoming, toward Meeteetse on State Highway 120 the Owl Creek Road, which is described as County Road Number 1, branches to the west approximately 8 miles from Thermopolis. The Owl Creek Road then runs along the south section line of Section 10, and approximately a mile from the junction with Highway 120 an unimproved dirt road heads north from the Owl Creek Road across the property of the appellee. This is the road over which appellants sought to establish an easement by prescription.

There is no question that that road had been used by appellants and their predecessors in interest at least as far back as 1918. The road was used as access to the property owned by appellants over the years, and appellants first used it in 1932. One of the officers of the appellee had known of the road for approximately 40 years. The road was used for whatever purpose it was needed. In addition to its use as access to a dwelling on the appellants' property, it was used by members of a club which met at the dwelling when it was owned by appellants' predecessors; for hunting; for haying; for irrigating; for weed control; to reach the property in connection with assessment by the county assessor; to haul machinery, grain and animals; to reach the property for purposes of an auction sale; and for other purposes. It was identified as the only road in and out of the property.

Appellants purchased the property in 1953 and they or their tenants resided in the dwelling from then until 1965. Since that time it has been vandalized and is no longer suitable for habitation. Appellants, since 1965, have used the road to reach a headgate to irrigate when water was available; to trail cattle onto the land; to haul machinery in and out; and to check on their livestock. Appellants periodically graded

the road and performed other maintenance to keep it passable. Appellants believed, as the trial court found, that they had acquired an easement over appellee's land when they purchased their property.

There was a gate where the dirt road connected with the Owl Creek Road, and it was used primarily by appellee to keep cattle in and to discourage trespassing. Appellants recognized these purposes, but appellants had ignored "No Trespassing" signs which were posted for 20 years because they felt they had no bearing on their use of the road. Appellants sometimes did not respect appellee's desires to have the gate remain closed, and if no cattle were in the pasture it would often be left open. Appellants directed others to use the road as the means of getting to and from their property.

The road was also used occasionally by appellee for purposes such as caring for cattle, maintaining fences and other ranching related uses. The gates and fences were primarily to keep the cattle in the pasture, and appellants' use did not conflict with the use by the appellee.

This dispute arose after appellants entered into some negotiation relating to a sale of a five-acre tract where the house was located. The prospective purchaser wanted electric service, and since the REA line serving the dwelling had been taken out the appellants consulted with the REA about putting an electrical line into the property. Officials of the REA advised an officer of the appellee that they would install the powerline along the existing dirt road, and at that juncture appellee locked the gate where that road entered the Owl Creek Road, and drove metal fence posts into the road thereby obstructing it.

This action by the appellee precipitated the lawsuit which resulted in this appeal. The appellants brought an action seeking a preliminary injunction requiring the appellee to open the road; a permanent injunction against interfering with their use of the easement; for a declaration of an easement for access purposes; and for damages. The appellee responded with an answer and counterclaim with the relief sought in the counterclaim being that the title to the property be quieted as against the appellants' claim of an easement by prescription. The district court did grant the preliminary injunction, but when the case came on for hearing upon the merits the district court found in favor of the appellee and quieted the appellee's title to the SW ¼ SW ¼ of Section 10, Township 43 North, Range 96 West of the 6th P.M. as against the claim of the appellants. This appeal followed.

In this court the appellants urge vigorously the proposition that they established all of the requisite elements for an easement by prescription, and that the decision of the trial court was against the great weight of the evidence. In further support of that position they urge that the conduct of the appellee should have been construed as acquiescence in their use rather than permission, and that in any event a prescriptive easement had been established prior to their acquisition of lands served by the easement. The appellee's position is that the evidence amply supported the finding that there was no adverse use by the plaintiff nor an adverse claim until shortly before the action was filed, and that the use was simply a neighborly gesture indulged in by all ranchers in the area for their mutual convenience. They also contend that the use of the road to serve a residence was abandoned when that residence was no longer used and that for that reason an interruption of use for the statutory period was shown as well as abandonment of any easement.

The determination by the trial court clearly is shown in the judge's decision letter addressed to the parties. In essence the trial judge concluded that the evidence was consistent with permissive use by appellants and that such use was permitted as a neighborly gesture by the appellee. The trial judge found that the appellants did not meet their burden of bringing home to the appellee the adverse and hostile use that they claimed with respect to the easement. It is our conclusion that this determination by the trial court must be sustained.

A brief review of the position of this court with respect to such matters perhaps is helpful. We know that in this jurisdiction acquisition of a private right-of-way by prescription is governed by the common law and that under the common law such a right is recognized. *Haines v. Galles*, 76 Wyo. 411, 303 P.2d 1004 (1956). In that case this court, following statements of the law in textual treatments, noted that the establishment of such an easement depends upon a continued and uninterrupted, open and visible, use of a definite right in the land of another which must be identical to that claimed as an easement, and has a relation to the use of, and a direct and apparent connection with, the dominant tenement. Such use must be under an adverse claim of right for a period corresponding to the statutory period of limitations.

We also have recognized a presumption of hostile and adverse use arising out of the open, visible, continuous and unmolested use of land for the period of time sufficient to acquire an easement by adverse user. *Auchmuty v. Chicago, Burlington & Quincy Railroad Company*, Wyo., 349 P.2d 193 (1960). In *White v. Wheatland Irrigation District*, Wyo., 413 P.2d 252 (1966), the proposition was set forth that the actual and continuous use of an easement, as of right, for the period of limitation for bringing an action to dispossess the claimant, creates the presumption of a grant. In both instances the court noted that the presumption is not conclusive and is subject to being rebutted by a showing that the use was permissive. It is this presumption which the appellants urge the court to apply in this instance.

This court, however, has recognized a different presumption which is so inconsistent that it appropriately may be described as antithetical. In *Gray v. Fitzhugh*, Wyo., 576 P.2d 88 (1978), the court held that entry into possession of another's property is presumed to be permissive and in subordination to the rights of the true owner absent a clear assertion of hostility. The proposition applied in *Gray v. Fitzhugh*, supra, is consistent with the treatment of the problem in *Yeckel v. Connell*, Wyo., 508 P.2d

1200 (1973), in which we held that the claimant's use was permissive and not adverse "as a matter of law" where the way also was used by the owner of the land along with the claimant of the prescriptive easement. The appellee urges that this presumption should be applied and followed in affirming the trial court.

The conflict between the opposing presumptions can be resolved in accordance with the treatment of the problem in 28 C.J.S. Easements § 68, pp. 736–737 (1941), in which the writer states:

"*Presumptions arising out of user.* The continuous user of an easement under a claim of right is presumptive evidence of ownership thereof, as against anyone who does not show a superior right. While the contrary is true in some jurisdictions, sometimes by reason of statute, the general rule is that proof of an open, notorious, continuous and uninterrupted user for the prescriptive period, without evidence to explain how it began, raises a presumption that it was adverse and under a claim of right, or, as is sometimes stated, raises a presumption of a grant, and casts on the owner of the servient tenement the burden of showing that the user was permissive or by virtue of some license, indulgence, or agreement, inconsistent with the right claimed. The facts to admit of such presumption are not, however, presumed; and the presumption itself is merely prima facie and may be rebutted. The presumption does not arise where the user is shown to be permissive in its inception, or where it is not shown to have continued for the prescriptive period; *nor, in the absence of some decisive act indicating separate and exclusive use, does it arise where the user is not inconsistent with the rights of the owner, as, for instance, where the user is in connection with that of the owner or the public or is claimed with respect to unoccupied, uninclosed, and unimproved lands, the use in such cases being presumed to be permissive and in subordination to the owner's title.* The latter pre-

sumption is not conclusive, however, and may be rebutted. * * *." (Footnotes omitted.) (Emphasis added.)

Of the authorities cited in the footnotes in support of the proposition that the presumption arising out of user is not applicable in an instance such as this and the use is presumed to be permissive several cases are found which approximate the circumstances disclosed in this record. *Corruthers v. King*, 235 Ark. 977, 363 S.W.2d 413 (1963); *Cox v. Cox*, 84 Idaho 513, 373 P.2d 929 (1962); *Parker v. Rosenberg*, 317 Ill. 511, 148 N.E. 269 (1925); *Cook v. Bolin*, Mo. App., 296 S.W.2d 181 (1956); *Blakemore v. Matthews*, 154 Tenn. 334, 285 S.W. 567 (1926). See also *Monroe v. Shrake*, 376 Ill. 253, 33 N.E.2d 459 (1941).

Looking further into the treatment of such problems by this court, we note that prescriptive rights and easements are not favored in the law. *Gray v. Fitzhugh*, supra. This court also has adopted what we would describe as the doctrine of neighborliness. *Kammerzell v. Anderson*, 69 Wyo. 252, 240 P.2d 893 (1952). In this latter case the court said at 240 P.2d 896:

" * * * [W]e think the question as to whether or not the use of the driveway was under a claim of right, ripening into an easement by prescription or was used as a mere neighborly accommodation, for friendly mutual convenience by acts of common neighborliness, is a question of fact to be determined by the trial court in the light of the relation of the parties, their conduct, the situation of the property, and all the surrounding circumstances. * * * "

The court went on to hold that the use of the driveway was one of neighborly accommodation, and quoted from *First Church of Christ, Scientist v. Revell*, 68 S.D. 377, 2 N.W.2d 674, 676 (1942), the following statement:

" * * * To hold otherwise would be to adjudge that common neighborliness may only be indulged under penalty of encumbering one's property."

These propositions were reaffirmed in *Yeckel v. Connell*, supra.

Of course the determination of the facts which lead to either the presumption of adverse and hostile use or the presumption of permission are within the prerogative of the trial court. In this instance the evidence is sufficient to support the findings of the trial court which would lead to the invocation of the presumption that appellants' use was permissive. That coupled with the propositions that prescriptive rights and easements are not favored in the law and that neighborliness and accommodation to the needs of a neighbor are landmarks of our western life-style require that the decision of the district court in this case be affirmed.

While we recognize that this disposition has the possibility of permitting termination of long and historic uses of unimproved roads, we are firm in our conviction that the best rule for the State of Wyoming is one which requires that a landowner claiming an easement by prescription in an unimproved road crossing the lands of his neighbor must assume the burden of establishing that his intention to make a hostile use of the road adverse to the interests of his neighbor was brought home to the neighbor in a clear and unequivocal way. His subjective intent will not be considered material, and while it is likely true that a manifestation of his hostile and adverse intent will result in revocation of permission to use the road across the neighbor's land, this is the best posture for the law to assume in the State of Wyoming. The claimant cannot rely upon a presumption arising out of the open, notorious, continuous and uninterrupted use for the prescriptive period, but in the absence of more that use will be presumed to have been with permission. To rebut this presumption the claimant must introduce evidence of the facts which demonstrate the manner in which the hostile and adverse nature of his use was brought home to the owner of the adjacent land.

The judgment of the trial court is affirmed.